Lynn S. Walsh, OSB #924955
email: lynn@lynnwalshlaw.com
610 SW Alder St., #415
Portland, Oregon 97205
Telephone: 503-790-2772

Meghan Apshaga, OSB #
Email: mapshaga@droregon.org
David Boyer, OSB # 235450
Email: dboyer@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
Telephone: 503-243-2081

        Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| J.B.,<br><br>            Plaintiff,<br><br>    v.<br><br>LEVI GRAY, JAYSON LEAK, PAUL KIZER, JOHN WALLACE, JAMIE DENNISON, FELIPE URZUA-PEREZ, STEPHEN MARTIN, THOMAS JOST, ROBERT YONALLY, LISA ARRINGTON, CHAD NAUGLE, NICOLE BROWN, MIKE REESE, and JOHN DOE,<br><br>            Defendants. | Case No. 3:23-cv-01962-AN<br><br>PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER |

Page 1      PLAINTIFF'S REPLY TO
            DEFENDANTS' RESPONSE
            TO MOTION FOR TEMPORARY
            RESTRAINING ORDER

David A. Boyer
OSB # 235450
Disability Rights Oregon
511 SW 10th Ave., Suite 200
Portland, OR 97205

I.      Introduction

Defendants' Reply brief purports to show the environment at Coffee Creek Correctional

Facility (CCCF) as an appropriate, positive environment for J.B.  We contend that there is

nothing further from the truth in that representation.  Instead, CCCF at its baseline fails to

operate in the gender-informed manner that is required for such a facility.  And, at its worst, it

operates unconstitutionally when attempting to house an individual like J.B. who has suffered

sexual trauma at the hands of their own employee.

Plaintiff, J.B., relies on previous briefing regarding the background of this case.  Instead, this

Response will focus on inconsistencies in the Defendant's briefing.  It is J.B.'s hope that the

Court will see CCCF as it is, as a place in which J.B. is not effectively treated for the trauma

incurred at this very facility.  And additionally, we hope to show that it is impossible for J.B. to

recover from the trauma that she suffered while remaining in the same location where the attack

occurred.

All of the facts related to this case, as presented in written and oral briefing, form the basis

for the Temporary Restraining Order (TRO).  These facts illustrate that J.B. will likely succeed

on the merits of this case, will suffer irreparable harm if she remains in her current situation, the

balance of equities tips in her favor, and the injunction is in the public interest.

II.     Background

PLAINTIFF'S REPLY TO                    David A. Boyer
              DEFENDANTS' RESPONSE                     OSB # 235450
              TO MOTION FOR TEMPORARY                  Disability Rights Oregon
              RESTRAINING ORDER                        511 SW 10th Ave., Suite 200
                                                       Portland, OR 97205

A.  LT Leak an LT Yonally

Defendants paint a picture in their Response brief that these two individuals are not friends with the perpetrator of the abuse, and their quotes and office displays are misunderstood by the recipients and viewers of their messages.

Even setting aside the facts surrounding the friendships of the various Defendants in this case that we will obtain in future discovery, the mere presence of officers that played a key role in the management of J.B.'s environment is necessarily triggering.  J.B.'s sexual assault was extensive and lasted for some time.  It is inconceivable that unit staff were not able to detect the assault and stop it.  Consequently, J.B. has intense anxiety around these officers, and especially the LTs that were ultimately responsible for the supervision of staff and the safety of the AICs at CCCF.

And what seems a benign symbol, the "Punisher" logo, is very much not benign in the context of where it was placed.  The Punisher was an "antihero" figure created by Marvel Comics in 1974 as an antagonist to Spider-Man, who "considers killing, kidnapping, extortion, coercion, threats of violence, and torture to be acceptable crime fighting tactics." *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 472 n.9 (8th Cir. 2010) (Lange, J., dissenting).  While we certainly are appreciative of LT. Yonally's service in the military, that does not excuse posting a symbol of hate in an area in which individuals like J.B. live.  This simple disregard for the feelings of AICs is a window into the environment of this facility.

PLAINTIFF'S REPLY TO                    David A. Boyer
                                                 DEFENDANTS' RESPONSE                    OSB # 235450
                                                 TO MOTION FOR TEMPORARY                 Disability Rights Oregon
                                                 RESTRAINING ORDER                       511 SW 10th Ave., Suite 200
                                                                                         Portland, OR 97205

B.  Retaliation

Defendants state in their declarations and in their brief that they do not engage in retaliation against J.B. This is certainly a nice sentiment, but all of the facts argue against its veracity.   Ms. Apshaga's experience with J.B. clearly counters the Defendants' version of the facts in two important ways.

First, the account of Ms. Apshaga in her declaration, clearly outlines the verbal abuse that J.B. sustained by another AIC who berated her with filthy language related to the sexual assault. (Apshaga Decl. p 3) That triggering tirade continued for at least 2 weeks until the offending AIC was removed.

Second, Ms. Apshaga relates two incidents in which J.B. was extracted from her cell with a level of violence sufficient to cause numerous bruises on her body.  (*See* Boyer Decl.)  Most notably, one of these extractions occurred while Ms. Apshaga was on the phone with J.B. to calm her.  That incident was provoked by J.B. placing a mattress over her cell window to alert behavioral health care workers after being ignored for some time.

C.  Plaintiff Misconduct History and Placement

Defendants spend quite a bit of space discussing the various disciplinary actions they have invoked against J.B. in an apparent justification for their inappropriate treatment and placement decisions.  J.B. does not dispute that she has presented a management issue for CCCF.  However, we contend that many of the infractions are due to the Defendants' poor management decisions and ineffective mental health care.  What remains glaringly unclear is how J.B. should be

Page 4          PLAINTIFF'S REPLY TO                    David A. Boyer
                DEFENDANTS' RESPONSE                   OSB # 235450
                TO MOTION FOR TEMPORARY               Disability Rights Oregon
                RESTRAINING ORDER                     511 SW 10th Ave., Suite 200
                                                       Portland, OR 97205

expected to conform to the staff's behavioral expectations when her actions are the direct result of CCCF staff's sexual assault and their subsequent ineffective programming and housing decisions.

One glimpse into this mismanagement is the incident that happened on December 3, 2023. We have described the incident above, including the bruises that were inflicted on J.B. Defendants describe this as the result of an "emergency transport team" and they report that she was released without any symptoms or distress. (Def Response to TRO at 8). J.B. was dragged from her cell in her underwear and the photos taken after the incident paint a different picture of her symptoms and distress. (*See* Boyer Decl.)

Defendants describe in detail the behavioral health planning process that purportedly includes mental health treatment and a behavioral intervention plan. Unfortunately, even if this treatment program existed, it has apparently fallen well short of any positive measurable outcomes. In fact, the plan could be best described as a complete failure. This is akin to victim blaming, especially when J.B. is being punished for the inability of CCCF to design and implement an effective treatment plan.

II. Argument

Plaintiff has met her burden for the entry of a temporary restraining order in this case. Defendants correctly state the legal requirements as (1) likely success on the merits; (2) likely irreparable harm; (3) the balance of equities tips in the plaintiff's favor; and (4) the injunction is in the public interest. J.B. has met this burden.

PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER    David A. Boyer OSB # 235450 Disability Rights Oregon 511 SW 10th Ave., Suite 200 Portland, OR 97205

A.  Plaintiff has shown that she will likely succeed on the merits

The Eighth Amendment of the United States Constitution requires that prisons provide to the basic human needs of the AICs in their custody.  *Farmer v. Brennan*, 511 U.S. 825 (1994).  Those basic human needs include adequate mental health care.  *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).  A plaintiff has the burden to show that a defendant has acted with "deliberate indifference" to prove that the Eight Amendment has been violated. The 9th Circuit has determined that a medical need is sufficiently serious for Eighth Amendment purposes when "…the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

Here, we rely on the expert opinion of Katherine Porterfield, Ph.D. to show that the treatment J.B. received was inadequate enough to both be injurious and to inflict unnecessary and wanton pain.  Ms. Porterfield's report is attached to the Motion for Temporary Injunction and is based on her extensive clinical experience. (Walsh Decl. Exh. 2).  The use of expert testimony in similar cases has been favorably viewed by courts.  *See Coleman v. Wilson*, 912 F.Supp. 1282 (E.D. Cal. 1995).  These opinions are typically viewed with wide latitude and deference.  *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

The Constitutionally deficient medical care provided by the Defendants is most obvious in the physical location where they attempt to provide the treatment.  Dr. Porterfield is clear in her report that individuals who suffer sexual violence at the hands of staff must be removed from the facility where this abuse occurred. (Walsh Decl. Exh. 2 at 10).  Similarly, the report highlights

PLAINTIFF'S REPLY TO
DEFENDANTS' RESPONSE
TO MOTION FOR TEMPORARY
RESTRAINING ORDER

David A. Boyer
OSB # 235450
Disability Rights Oregon
511 SW 10th Ave., Suite 200
Portland, OR 97205

the effects of peer dynamics and how they can exacerbate the negative impact of trauma.  (*Id*. at 8).  Other elements of effective treatment for sexual violence victims includes repeated exposure to the trauma narrative in a safe treatment space. (*Id*. at 11).  The essential element necessary for effective treatment seems to be safety and treatment will not be effective if the survivor is "suffering ongoing trauma or threat of victimization." (*Id*.)

In short, J.B. will not be effectively treated for the sexual assault she experienced at CCCF if she continues to be housed in the location in which the abuse occurred.  She will continue to be exposed to triggers of the event and she will have constant reminders of what happened to her at the hands of the staff at that facility.  And those powerful memories are not simply from the physical location.  She is supervised by the same individuals that were working while the attacks occurred.  Further, as described in Dr. Porterfield's report, other inmates have verbally harassed her in retaliation for the attacks and her report of the abuse.

Additionally, CCCF's practice of attempting to treat PTSD by not discussing the event, particularly an event so recent, seems counterintuitive and contrary to what Dr. Porterfield expertly opines in her report.   Defendants' Reply brief addresses the reasoning behind not allowing J.B. to discuss the details of the sexual assault at their facility:

> For AICs with Post Traumatic Stress Disorder ("PTSD"), discussing details about a traumatic event may place them into an even more vulnerable state and set them back in developing the necessary coping skills. Repeated detailed discussions also runs the risk of retraumatizing the person. For those reason, BHS avoids detailed discussion of an AIC's traumatic experiences and focuses more on developing the necessary skill set to overcome them.

| PLAINTIFF'S REPLY TO | David A. Boyer |
|---|---|
| DEFENDANTS' RESPONSE | OSB # 235450 |
| TO MOTION FOR TEMPORARY | Disability Rights Oregon |
| RESTRAINING ORDER | 511 SW 10th Ave., Suite 200 |
| | Portland, OR 97205 |

(Hutson Decl. pp 3-4).  Instead of directly addressing the thoughts and emotions that are consistently affecting J.B., the mental health treatment seems to rely on a combination of Dialectical Behavioral Therapy (DBT) and the use of the non-profit organization, Center for Hope and Safety.  Neither have been effective, and that ineffective treatment has caused continued and worsened conditions for J.B.    In fact, there is no evidence to suggest that the Center for Hope and Safety provides therapy.  They certainly offer support to victims of abuse, but the proffer of that as treatment for PTSD should be viewed with skepticism.  Using the Center along with calls to J.B.'s attorney as treatment should not be a substitute for actual professional psychiatric treatment for a serious condition.

Withholding treatment and continuing to confine J.B. to the location where she experienced horrendous abuse at the hands of those paid to protect her will result in further significant injury and amounts to "unnecessary and wanton infliction of pain."   Defendants have been reminded of their responsibility several times over the past months and they continue to ignore threats to J.B.'s well-being and will likely inflict long-term damage to her psychiatric well-being if permitted to continue their conduct.  All of this provides ample evidence that the Defendants are in violation of the Eighth Amendment through their deliberate indifference to J.B's significant medical condition.

B.  Plaintiff will suffer irreparable harm without the relief sought here

Plaintiff J.B. has sustained repeated injuries, both physical and psychological, during her confinement at CCCF.  It logically follows that she will continue to suffer these injuries without some change in her treatment or placement.  Defendants argue that it is J.B.'s fault that she is

suffering harm.  Given what happened to J.B. in Defendants' facility, this argument is specious at best.

C.  The balance of inequities and public interest weigh in Plaintiff's favor

"Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020).  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation marks and citation omitted).  Plaintiff has shown Defendants have violated her Eighth Amendment rights by failing to provide adequate mental health treatment through deliberate indifference.

Defendants' argument that J.B. has the means necessary to engage in treatment, refrain from misconduct, and complete her programming is on its face false.  Plaintiff's expert Dr Porterfield makes it clear that J.B. will not and cannot benefit from any of the treatment or programming in its current form.  And a cursory glance at J.B.'s symptoms would provide further evidence of the ineffectiveness of her treatment.

Defendant is accurate that ODOC can explore alternative housing options and we encourage them to do so.  In fact, even though the Defendants quickly dismiss the idea that J.B. could receive treatment at the Oregon State Hospital (OSH), ORS 179.473(1)(b)[1] contains a provision

---

[1] The Department of Corrections may transfer an adult in custody in a Department of Corrections institution to a state hospital listed in ORS 426.010 (State hospitals for persons with mental illness) for evaluation and treatment pursuant to rules adopted jointly by the Department of Corrections and the Oregon Health Authority.

Page 9        PLAINTIFF'S REPLY TO             David A. Boyer
              DEFENDANTS' RESPONSE             OSB # 235450
              TO MOTION FOR TEMPORARY          Disability Rights Oregon
              RESTRAINING ORDER                511 SW 10th Ave., Suite 200
                                               Portland, OR 97205

for just such a transfer to occur. And Judge Mosman's order in *OAC v Mink* contains a provision that permits "expedited admission" to OSH under certain circumstances. Given the draconian restrictions that have been placed on J.B. for her safety and to prevent self-injury, it would seem that she would at least merit an evaluation for such a transfer. Using her attorneys and support groups as quasi-therapists to calm her in times of distress is less than ideal.

III.    Conclusions

For the above-state reasons, Plaintiff J.B. has met the burden for a Temporary Restraining Order and we urge the Court to grant the appropriate relief.

DATED: January 24, 2024.

 /s/ David A. Boyer

David A. Boyer, OSB #235450
Attorney for the Plaintiff

PLAINTIFF'S REPLY TO            David A. Boyer
            DEFENDANTS' RESPONSE            OSB # 235450
            TO MOTION FOR TEMPORARY        Disability Rights Oregon
            RESTRAINING ORDER              511 SW 10th Ave., Suite 200
                                            Portland, OR 97205