Lynn S. Walsh, OSB #924955
email: lynn@lynnwalshlaw.com
610 SW Alder St., #415
Portland, Oregon 97205
Telephone: 503-790-2772

Meghan Apshaga, OSB # 232137
Email: mapshaga@droregon.org
David Boyer, OSB #235450
Email: dboyer@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
Telephone: 503-243-2081

      Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| J.B., | NO. 3:23-cv-01962-CL |
|     Plaintiff, | |
| | FIRST AMENDED COMPLAINT |
|     v. | Civil Rights Action (42 U.S.C. § 1983); negligence; sexual battery; battery; intentional infliction of emotional distress |
| LEVI GRAY, JAYSON LEAK, PAUL KIZER, JOHN WALLACE, JAMIE DENNISON, FELIPE URZUA-PEREZ, STEPHEN MARTIN, THOMAS JOST, ROBERT YONALLY, LISA ARRINGTON, CHAD NAUGLE, NICOLE BROWN, DAVID GONZALEZ, and STATE OF OREGON, | DEMAND FOR JURY TRIAL |
|     Defendants. | |

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

J.B. is a young woman who was incarcerated at Coffee Creek Correctional Facility (CCCF), the only women's prison in the Oregon Department of Corrections (ODOC) system. She suffers from psychiatric disabilities and has a horrid history of physical and sexual abuse as a child, including being a victim of sex trafficking while in the custody of Oregon Department of Human Services.  While at CCCF, J.B. was sexually abused by Correctional Officer Levi Gray for almost two months in the segregation unit.

Sergeant Levi Gray had a long history of Prisoner Rape Elimination Act (PREA) complaints, complaints from women Corrections Officers regarding intimidation, and a history of not following policies and procedures, yet he was never reprimanded or fired.  Other officers, particularly Captain David Gonzalez, knew at a minimum that Sergeant Gray was violating prison policies regarding boundaries with women in custody and was accused of sexually abusing women prisoners, yet Captain Gonzalez took no action to stop Sergeant Gray.  The segregation corrections officers, charged to protect the J.B. knew or should have known that Gray was sexually abusing JB, but they failed to stop the abuse.

Since the abuse, J.B. was subjected to severe retaliation, including harmful, discriminatory and harassing behavior, such as being hauled through the prison in a body bag, being forced to sleep on the floor without a mattress or proper clothing to keep warm, and numerous uses of force.  J.B.'s treatment demonstrates ODOC management's complete inability to operate a woman's prison without violating minimal constitutional protections and the federal Prison Rape Elimination Act (PREA) regulations that prohibit retaliation for reporting sexual abuse.

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

## JURISDICTION

1.      This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C.

§§1983, 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

## VENUE

2.       Venue is proper within the District of Oregon because all the events giving rise to this

claim occurred in this judicial district, and all defendants reside in this judicial district.  28

U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff J.B. is an adult currently residing at the Washington Correctional Center for

Women in Gig Harbor, Washington.  J.B. was moved to the Washington facility from Coffee

Creek Correctional Facility (CCCF) under an interstate compact after the original complaint in

this matter was filed.

4.      Levi Gray was an employee of the Oregon Department of Corrections (ODOC) and was a

correctional sergeant at CCCF.  He is sued in his individual capacity.  At all times relevant, he

was acting under color of state law.

5.      Jayson Leak is an employee of ODOC and is a correctional lieutenant at CCCF.  He is

sued in his individual capacity.  At all times relevant, he was acting under color of state law.

6.      Paul Kizer is an employee of ODOC and is a correctional officer at CCCF.  He is sued in

his individual capacity.  At all times relevant, he was acting under color of state law.

7.      John Wallace is an employee of ODOC and is a correctional officer at CCCF.  He is sued

in his individual capacity.  At all times relevant, he was acting under color of state law.

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

8.      Jamie Dennison is an employee of ODOC and is a correctional officer at CCCF.  She is sued in her individual capacity.  At all times relevant, she was acting under color of state law.

9.      Felipe Urzua-Perez is an employee of ODOC and is a correctional officer at CCCF.  He is sued in his individual capacity.  At all times relevant, he was acting under color of state law.

10.     Stephen Martin is an employee of ODOC and is a correctional officer at CCCF.  He is sued in his individual capacity.  At all times relevant, he was acting under color of state law.

11.     Thomas Jost is an employee of ODOC and is a correctional captain at CCCF.  He is sued in his individual capacity.  At all times relevant, he was acting under color of state law.

12.     Robert Yonally is an employee of ODOC and is a correctional lieutenant at CCCF.  He is sued in his individual capacity.  At all times relevant, he was acting under color of state law.

13.     Lisa Arrington is an employee of ODOC and is the grievance coordinator at CCCF.  She is sued in her individual capacity.  At all times relevant, she was acting under color of state law.

14.     Chad Naugle is an employee of ODOC and was the assistant superintendent of security at CCCF.  He is sued in his individual capacity.  At all times relevant, he was acting under color of state law.

15.     Nichole Brown is an employee of ODOC and was the superintendent of CCCF.  She is sued in her individual capacity.  At all times relevant, she was acting under color of state law.

16.     David Gonzalez is an employee of ODOC and is a Captain and was the PREA Compliance Manager at CCCF.  He is sued in his individual capacity.  At all times relevant, he was acting under color of state law.

17.     The State of Oregon runs the ODOC prisons, including CCCF.  The State is obligated to protect its adults in custody from harm, comply with PREA regulations, accommodate those with

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

disabilities, and provide adequate medical and mental health care.

## FACTUAL ALLEGATIONS

18.    Plaintiff J.B. is a young woman currently in custody at a prison outside of the State of Oregon.

19.    Plaintiff suffers from psychiatric disabilities. According to a psychological evaluation done while she was incarcerated, she suffers from Attention-Deficit Hyperactivity Disorder, Posttraumatic Stress Disorder (PTSD), Borderline Personality Disorder, and Antisocial Personality Disorder.

20.    Plaintiff had a traumatic childhood. Her mother beat her and put her in a coma when plaintiff was eleven; she was removed from the home and the rest of her family.  While in Oregon Department of Human Services (DHS) custody, she was sex-trafficked between the ages of 14-17.  She suffered numerous additional childhood traumas.

21.    Plaintiff frequently self-injures or cuts herself to cope with her emotional pain, intense anger, and stress.

22.    Plaintiff has a history of attempted suicides during her short stay at CCCF.

23.    In early 2023 at CCCF, plaintiff attempted suicide and was placed on suicide watch.  She first met defendant Gray during her time on suicide watch. He began behaving sexually inappropriately towards plaintiff while she was on suicide watch.

24.    Beginning in April of 2023, J.B. was housed in various sections of the Segregation Unit.

25.    During April and May of 2023, Gray worked in the Segregation Unit.

26.    Gray had J.B. moved to a cell that contained a sally port (an enclosed area outside of the cell) with no camera. Sgt. Gray did this so that he could sexually abuse J.B.

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

27.     Being alone in the sally port outside of J.B.'s cell was a clear violation of the Rule of Three, a CCCF rule implemented, in part, to keep women in custody safe from sexual predators.

28.     Gray knew he was violating the Rule of Three by being alone outside of J.B.'s cell.

29.     Specifically, Gray admitted in an earlier sexual abuse investigation involving an incarcerated woman (hereinafter identified as J.Z.) in an identical cell with a sally port, that being in the sally port alone is a violation of the Rule of Three.

30.     The complaints against Gray regarding violations of the Rule of Three with J.Z. were substantiated.

31.     The Post Order regarding the Rule of Three states that a violation is grounds for discipline up to and including termination.

32.     Gray received no discipline for the violation of the Rule of Three.

33.     No remedial measures were taken to prevent corrections officers from sexually abusing adults in custody while in the sally ports.

34.     In April and May of 2023, J.B. was repeatedly physically and sexually abused by defendant Gray. The abuse included throwing her against a wall and groping her while she was handcuffed, choking her while kissing her, grabbing her through the cuff port and pulling her, pinching and hitting her, grabbing her breasts so hard that it was painful, shoving her into the cell and then yanking her back with the leash on her handcuffs, and requiring her to perform oral sex on his penis sticking through the cuff port while he was standing in the sally port.

35.     J.B. endured sexual abuse from Gray for 40 minutes or more, sometimes two or more times a day, on numerous occasions over a two-month period.

36.     J.B. reported the abuse on May 23, 2023.

FIRST AMENDED COMPLAINT                        LYNN S. WALSH
                                                                                        OSB# 924955
                                                                                        610 SW Alder St., #415
                                                                                        Portland, OR 97205
                                                                                        503-790-2772
                                                                                        lynn@lynnwalshlaw.com

37.    Gray admits that J.B. performed oral sex on him with his penis sticking through the cuff port while standing in the sally port on May 23, 2023.

38.    Had it not been for the fact that there was DNA on J.B. and in her cell, Gray would have likely denied the incident took place and would most likely still be working at CCCF.

### Gray's Past Employment History

39.    It is a matter of public record that Gray has a history working as a bouncer/manager of a strip club in North Portland called The Viewpoint.  He worked there for over three years from 2005 to 2008. By his own admissions in a lawsuit he filed in April 2010, the club overserved intoxicated patrons and dancers, and served alcohol to underaged patrons; illegal drugs were sold at the club; one employee sexually assaulted other employees or had them perform sex acts for cash payments; patrons paid for "illegal dances;" and the club discriminated against performers based upon their unwillingness to engage in unlawful, paid sexual acts.

40.    Based upon the public information described in paragraph 39, Defendants Brown and Naugle knew or should have known that Levi Gray was unsuited to work in a women's prison.

### Gray's History of Misconduct at ODOC

41.    Gray had a history of misconduct at CCCF long before he sexually abused J.B. Gray's misconduct history demonstrates that abuse of women, both women in custody and women employees, is the norm at CCCF. Gray's misconduct history is very well documented in ODOC records as follows:

   a.  On June 15, 2017, the prior CCCF superintendent Rob Perrson initiated an investigation into Gray for violating boundaries with woman in custody J.S., including by allegedly leaving a hickey on J.S.'s neck, and for violating CCCF's policies and procedures regarding

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

housing assignments (in which J.S. was involved).  This investigation also included

allegations of Gray orchestrating with an adult in custody to introduce the Schedule II drug

Suboxone into the prison. J.S. was disciplined and went to disciplinary segregation for the

hickey. As far as can be determined, there was no action against Gray for the boundary

violations, for orchestrating the introduction of drugs into the prison, or for the substantiated

allegation of violating CCCF's policies and procedures regarding housing assignments.

b.   In February 2020, Gray was accused of showing pornographic photos of his girlfriend,

ODOC employee Sgt Sara Herd, to other ODOC security staff. Gray (who was married to

someone else) denied the allegations at the time, but admitted the photos existed and that he

discussed them off duty with others in the parking lot at CCCF. He was never disciplined for

this conduct.

c.   In April 2021, Gray was accused of touching Sgt. Herd inappropriately in the workplace.

He was not disciplined for this conduct.

d.   Also in April 2021, Gray was accused of making extremely inappropriate sexual

comments to Sgt. Herd in the workplace. He was not disciplined for this conduct.

e.   Beginning in May of 2021, Gray began harassing woman correctional officer M.G. who

had made complaints regarding Gray's inappropriate workplace behavior with Herd.

Specifically, he demanded to know what she stated in her complaint; she refused.  Gray

began threatening and harassing Officer M.G. Gray's behavior got so bad that Officer M.G.

became afraid to walk to her car alone at night and was afraid to be around Gray.  Even

though defendant Assistant Superintendent Naugle told Gray that Gray could not question

Officer M.G., Gray persisted with the intimidation and harassment. Gray's intimidation and

Page 8            FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

harassment of Officer M.G. continued until at least sometime in June of 2021, when Naugle

issued a "separation order" for Gray and Officer M.G.

f.    In June of 2021, Gray apparently became out of control and obsessed with adult in

custody M.F.  He began looking up M.F.'s private information in the DOC400 (an antiquated

ODOC computer database with inadequate security measures).  ODOC records indicate Gray

looked up private information, including M.F.'s trust account information, on numerous

occasions starting June 15, 2021, through December 2021, often multiple times per day.

Looking up private trust account information is indicative of extortion or drug activity.

g.    On June 28, 2021, Gray is alleged to have sexually assaulted adult in custody J.Z.

h.    On July 6, 2021, Gray is alleged to have sexually assaulted adult in custody J.Z. a second

time.

i.    On July 8, 2021, adult in custody J.Z. reported the sexual abuse described in paragraphs g

and h above to prison personnel.  Specifically, she accused Gray of sexually assaulting her

from the sally port outside of her cell in Segregation (a cell identical to J.B.'s cell), and in a

medical waiting area.  ODOC investigated and did not substantiate (but also did not rule out)

the allegations of sexual assault, yet did substantiate that Gray was in violation of the Rule of

Three for being alone with an adult in custody in both areas of the prison.   Even though a

violation of the Rule of Three can result in the termination of employment, Gray received no

discipline.

j.    Corrections Officer K.R. (a woman) received information regarding Gray's abuse of J.Z.

yet was told by a Lieutenant not to write a memo.  K.R. ignored the Lieutenant and submitted

the PREA Complaint Form.   Gray then accosted Officer K.R. demanding to know what she

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

said in the PREA complaint. Gray then attempted to set up Officer K.R. to be assaulted by an adult in custody by seriously violating security protocols.

k. In July 2021, Gray was accused of and investigated for kissing and being in a relationship with Adult in Custody M.F. (described in paragraph f above).

l. On April 4, 2023, Gray failed to follow security protocols, which resulted in an assault of an officer.

m. Also on April 4, 2023, Gray used excessive force against an adult in custody. A review team's report confirming the excessive use of force described Gray's actions as follows:

> "The video showed Sgt. Gray placed AIC [redacted] against the wall in an aggressive manner; or, at minimum, in a manner· that was inconsistent in the assurance of her safety given she was wearing glasses and she was placed on the wall so her face appeared to bounce off the wall."

In further demonstration of Gray's lack of fitness for his position, he called this AIC "a fucking child" after the substantiated use of excessive force.

n. On April 17, 2023, Gray failed to follow security protocols, which placed the officers at risk of assault.

o. On May 18, 2023, a complaint was brought forward that between March and May of 2023, Gray was not following security protocols which increased the risk of assaults on staff.

p. Other allegations included numerous instances of violating security protocols that required two person escorts, e.g., he would escort women adults in custody alone to the shower.

42.    Based upon paragraph 41 a-p above, a staff member's years-long history of misconduct will not result in termination from CCCF.

43.    Gray's pattern of misconduct and abuse is even more striking considering that between

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

February 2019 to May 23, 2023, just over 58 months, Gray was on several leaves of absence

from work, totaling approximately 24 months. Thus, all but the 2017 misconduct actually took

place over only the 28 months that Gray was on duty at CCCF.

44.    The leaves of absence are claimed to be medical leaves of absences, although they seem

to coincide with ODOC investigations of his misconduct.

**Allegations Against Defendant Captain David Gonzalez**

45.    As CCCF's PREA Compliance Manager (PCM), Captain Gonzalez was responsible for

ensuring that CCCF complies with the Prison Rape Elimination Act, and the federal PREA

regulations.

46.    Specifically, according to a job posting by ODOC,

> "[t]he PCM shall evaluate the effectiveness and quality of the PREA program at the
> facility on an ongoing basis and recommend and formulate plans for strategies to address
> issues or compliance concerns. *This includes after action reviews to determine the cause
> of sexual abuse and sexual harassment, to ensure that corrective action is completed to
> prevent future abuse from occurring.*"  (Emphasis supplied.)

47.    The allegations made by adult in custody J.Z. in June and July of 2021 (see paragraphs 41

g-i above) were investigated by the Special Investigations Unit (SIU), SIU Case No. 21-0356-I.

48.    This investigation was completed on or about February 27, 2023.

49.    It is not known why it took two years to complete the investigation regarding the sexual

assault of J.Z.

50.    Under federal PREA standards 28 CFR Part 115, when investigating a case, the

investigator determines if allegations are Unfounded, Substantiated, or Unsubstantiated, which

are defined as follows:

    a.    *Substantiated allegation* means an allegation that was investigated and determined to

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

have occurred.

b. *Unfounded allegation* means an allegation that was investigated and determined not to have occurred.

c. *Unsubstantiated allegation* means an allegation that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred.

51.    Although this investigation found the allegations of sexual assault to be "unsubstantiated," it did "substantiate" that defendant Gray "failed to follow the Rule of Three on at least two occasions with [adult in custody J.Z.] at CCCF."

52.    The investigation also substantiated that Gray violated security protocols by allowing J.Z. to slip her cuffs.

53.     The investigator called PCM Capt. Gonzalez who confirmed the front of segregation cell D110 and the medical holding area were isolated viewing areas and required the compliance with the Rule of Three.   Although the date of this phone call is not recorded in the SIU Investigation, the investigation was completed on February 17, 2023, indicating that the phone call with PCM Capt. Gonzalez took place sometime before February 17, 2023.

54.    ODOC PREA Policy 40.1.13 states that an incident review form should be completed within 30 days of the conclusion of the sexual abuse investigation.  As part of that incident review, the reviewer is to determine if physical barriers prevented the detection of the abuse.

55.    Even though the J.Z. investigation was completed on February 17, 2023, and PCM Captain Gonzalez knew there were violations of the Rule of Three occurring in Segregation in the cells with sally ports, Gonzalez did not fill out the Sexual Abuse Incident Review Form until

Page 12         FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

almost five months later on August 8, 2023.

56.    In the Sexual Abuse Incident Review Form, Gonzalez noted that there were physical barriers that prevented detection of the abuse, and that they would install cameras in the sally ports of the segregation cells.

57.    Had PCM Captain Gonzalez followed his job description and the PREA policy and done the review within 30 days, the abuse of plaintiff J.B. would have been prevented.

58.    Yet, instead of following the PREA policy, Gonzalez sat on the job, failed to complete the Sexual Abuse incident Review Form in a timely manner, did nothing to enforce the Rule of Three in segregation, did nothing to enforce ODOC PREA Policy and Post Rules in segregation, and did not do anything to prevent Gray from continuing to abuse women in custody from the sally ports in the Segregation Cells, allowing Gray to continue his abuse from the sally ports outside of the cells and to proceed abusing plaintiff J.B.

**Allegations Against Officers Working in Segregation**

59.    Upon information and belief, some ODOC staff working in the disciplinary segregation unit during 2023, including Jost, Yonally, Leak, Wallace, Dennison, Urzua-Perez, and Martin knew or should have known that defendant Gray was sexually abusing J.B., and ignored the obvious misconduct.

60.    Specifically, the ODOC PREA Policy and Post Orders require Unannounced Rounds by the [Officer in Charge] to be documented "to identify and deter staff sexual abuse and sexual harassment, on all shifts."   In the Segregation Unit, the Officer in Charge (OIC) is defined as:

> The OIC is the immediate supervisor for Security staff assigned to this post. Operational issues will be directed through the Operations Captain and Special Housing Unit (SHU) Lieutenant. The SHU Lieutenant is primarily responsible for the supervision of the unit and staff.

Page 13        FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

61.    Defendants Captain Jost, Lt. Yonally and Lt. Leak were the OICs and utterly failed to ensure that rounds were conducted in the segregation unit in a manner that would ensure that the sexual abuse of prisoners in segregation would be reported.  Upon information and belief, Jost, Yonally and Leak failed to conduct and document Unannounced Rounds in a manner that would deter staff sexual abuse.

62.    After the abuse by Gray was reported, plaintiff was housed back in the Segregation Unit where the abuse took place, thereby causing a substantial increase in PTSD symptoms.

63.    Even though Gray was placed on a Leave of Absence and was facing criminal charges, defendant Kizer could still not control his behavior and sexually harassed plaintiff shortly after Gray was walked off the CCCF campus.

**Factual Allegations Regarding Culture of Abuse and Retaliation**

64.     Sexual abuse appears to be the norm at CCCF.

65.    The management defendants have failed to take meaningful action to prevent the sexual abuse of women in custody.

66.    By way of example, the prior CCCF PREA Compliance Manager (i.e., the person in charge of enforcing the Prison Rape Elimination Act (PREA)) was placed on a Leave of Absence in April 2022, and terminated from ODOC in October, 2023.  DPSST records indicate she surrendered her certifications.  Upon information and belief, the CCCF PREA Compliance Manager engaged in an improper relationship with an adult in custody, indicating that those in charge of preventing sexual abuse at CCCF can act with impunity.

67.    The prior PREA Compliance Manager referenced above also spent at least several years as a PREA investigator, thus compromising the credibility of her investigations.

Page 14        FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

68.     Based upon a public records request to Oregon State Police (OSP), ODOC management defendants did not refer the case to OSP for investigation and prosecution.

69.     Further support for sex abuse being the norm at Coffee Creek include:

a.      A former CCCF nurse was recently sentenced to 30 years in prison for sexually abusing approximately 17 women.  The total number of victims is unknown.

b.      Based upon public information, the allegations against the nurse were labeled as "unfounded" by ODOC personnel (including the prior PREA Compliance Manager described in paragraphs 66 and 67 above);

c.      A former groundskeeper was arrested in 2009 for sexually abusing Adults in Custody in an area of the prison called the "rape shed."

d.      A 2012 article in the Oregonian revealed "rampant problems and missed opportunities to fix them," finding that sex occurred all over the 108-acre prison campus, and that security weaknesses identified years earlier remained.

70.     There is a long history of abuse and retaliation for reporting sexual abuse at CCCF.  This abuse and retaliation is directly encouraged by some management defendants.

71.     As an example of CCCF's abusive culture, defendant Lt. Yonally had, until the week of October 23, 2023, a sticker of a Marvel character called "The Punisher" above his door in the disciplinary segregation unit (DSU).

72.     According to a variety of sources, Punisher is a vigilante superhero that tortures and murders those accused of crimes.  The logo, which has come to symbolize vigilante justice, has now been adopted by far-right groups and was seen on display at the January 6 invasion of the U.S. Capitol.

Page 15         FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

73.     Similar to Yonally, defendant Lt. Leak used the dark Star Wars character Darth Vader,

one of the most iconic villains in popular history, as his alter ego, signing his emails as follows:



Lieutenant Jayson Leak
Coffee Creek Correctional Facility
3rd Shift DSU/Intake Lieutenant
Work: 503-570-6421
Cell: 971-264-8135
"(Heavy Breathing...)"Darth Vader

74.     High-ranking male officers pretending to be "Punisher" or "'(Heavy Breathing . . .

)'Darth Vader" in the disciplinary segregation unit of a women's prison is not only an affront to

CCCF's goal of being gender responsive and trauma informed, these are symbolic threats to all

women detained in the DSU that they will be punished, tortured or killed if they do not comply

with correctional officers' demands.

75.     This mind-bending immaturity of the DSU Lieutenants pretending to be villainous

superheroes in their day-to-day management of traumatized women is not something they hid.

This breathtaking lack of professionalism was on full display as a sticker in the DSU and as an

email signature in discussing J.B.'s management plan.

76.     Clearly, the DSU Lieutenants Yonally and Leak are not Gender Responsive and Trauma

Informed in their work.  Likewise, their superiors, Captain Jost, Chad Naugle and Nicole Brown,

who allowed this culture to exist, failed in their goals of being Gender Responsive and Trauma

Informed in their management of CCCF.

77.     In fact, an August 2023 Gender Informed Practices Assessment (GIPA) report (found on

ODOC's website at https://www.oregon.gov/doc/Documents/gipa-report.pdf) states that CCCF is

lacking in many key areas, indicating that CCCF is not Gender Responsive or Trauma Informed,

including:

         a.      " Various features of the environment can be highly triggering for women, most

Page 16         FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

of whom are survivors of trauma, and there is a need for more space for essential

activities, including recreation and programming."

b.       "[I]mplementation and expansion of gender responsive and trauma-informed

policies and practices . . . is not being translated throughout the facility's operations and

this is especially evident  . . . throughout restrictive housing. Persistent challenges,

including lack of faith in PREA and grievance protocols, are linked to limited bandwidth,

post-pandemic barriers, a crisis-driven culture, staffing shortages, and a significant lack

of staff training and coaching regarding effective interventions with women."

c.       Due to a significant lack of training, "[v]eteran staff with traditional attitudes

about incarcerated women, plus an influx of new, inexperienced staff who lack essential

trauma-informed communication skills, has contributed to inconsistent operations and

troubling and harmful interactions with women that are compromising physical and

emotional safety."

d.       "There is low morale among staff, and the majority of women reported that they

do not feel emotionally safe or respected."  "[M]any staff are reportedly engaging in

harmful, discriminatory and harassing behaviors, while other staff feel powerless to

address it."

e.       "Staff rely on a[sic] few gender-neutral tools to respond to various

behaviors, including those that signal mental health needs, and use harmful language and

practices that uphold a punitive, para-military culture. Positive reinforcement is lacking,

and sanctions can be quite lengthy, causing women to lose privileges for unnecessarily

long periods of time. These kinds of disciplinary practices reenact trauma, cause harm,

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

and have numerous short- and long-term impacts on women . . .."

      f.     "There were consistent reports that medical and mental health care is inadequate, delayed or denied, poor in quality, and not calibrated to the needs of women . . .."

78.     J.B. experienced all of CCCF's deficiencies described above firsthand.

79.     The retaliation began as soon as J.B. returned from the hospital from the rape exam. Upon return, she was eventually placed back into segregation, where the abuse took place and where she was clearly not safe.

80.     Not only was J.B. placed back into the same triggering environment where the abuse occurred, she also had to endure being in the same unit as the officers who allowed the abuse to happen, specifically Jost, Leak, Yonally, Wallace, Dennison, Urzua-Perez and Martin.

81.     On May 29, 2023  (only six days after Gray's sexual and physical abuse ceased) J.B. was on suicide watch which means wearing only a smock and no underwear.  J.B. requested a woman officer (who was standing there) put the leg restraints on J.B.    In response, Lt. Leak yelled, "You don't get to dictate what my staff do! I don't care what happened to you, you are going to be treated like any other AIC."  This behavior by Lt. Leak was not only retaliatory, it was clearly not gender responsive or trauma informed, and likely contributed to J.B.'s PTSD.  Fortunately, another officer intervened.

82.     Captain Jost actually threatened J.B.. in writing when she enquired as to why she was not getting canteen, responding, "You are getting exactly what you have coming to you."  This was perceived as, and likely was, a threat for her cooperation with law enforcement for the Levi Gray prosecution.

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

83.     Making matters even worse, the para-military villainous superheroes Yonally and Leak participated in creating J.B.'s Management Plan in the DSU, thus giving them input on her ability to "level out" of her environment in DSU and back to general population.  According to DPSST records, Leak has no college education whatsoever, and Yonally has some college credits but no degree.  These uneducated male correctional officers have no business giving input on the management plan of J.B., especially in light of their prior relationship with defendant Gray, and their immature, retaliatory and unprofessional behavior that is documented throughout this Complaint.

84.     The officers, including Lt. Leak, used the disciplinary rule violation process to retaliate against J.B. and impose discipline making it impossible to "level out" of DSU.  A few examples are as follows:

a.   June 6, 2023 – J.B. previously met with Captain Gonzalez and others stating that she did not want to be around Lt. Leak, or want him involved in her programming, because he is friends with defendant Gray, and she was uncomfortable around Leak.  On June 6, 2023, J.B. was meeting with Captain Gonzalez regarding her retaliation complaints when Leak entered the room.  J.B. told Gonzalez that she did not want Leak in the room.  Leak accused J.B. of yelling at him and wrote her up for Disobedience of an Order I and Disrespect. II.  Captain Gonzalez and the other officers who were present submitted reports that did not substantiate the Leak's accusations.  Neither did the video.  The charges were dismissed.

b.   Also on June 6, 2023 after the incident in paragraph a above – J.B. believes that Leak gave an order to search her cell in retaliation for the above incident in paragraph a.  J.B. was upset that her cell was left in a disheveled state.  Although the officers' statements are all

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

contradictory, it appears that J.B. may have stated that Leak wanted her cell to be "fucked up" and she further stated that the officers didn't know what they were doing.  She was charged with Disrespect 2.  The charges were dismissed by the hearings officer.

c.  June 26, 2023 – J.B. was disciplined for conduct related to her committing an act of self-harm.  She engaged in cutting after receiving distressing news, and a decision was made to put her in a suicide smock.  Based upon another Adult in Custody's letter to the hearings officer, Officer Cuevas said things to J.B. to trigger her, so she asked him to leave.  Cuevas refused to leave causing J.B. to use profanity and refuse to put on the suicide smock. At the hearing on the disciplinary report, the hearings officer failed to consider J.B.'s mental health, and failed to consider Cuevas' intentional triggering, even though the rules require it when an Adult in Custody engages in self-harm.

85.    J.B. despised the officers who allowed Gray to sexually abuse her and thus lost the ability to speak to those who managed her, including Jost, Yonally and Leak, in a civil manner, regularly calling them derogatory names.  She was then disciplined for her uncontrollable feelings of hatred towards these officers, thus extending her stay in the Disciplinary Segregation Unit.

86.    The officers appeared to make a game out of trying to bait J.B. into being disrespectful.  On December 12, 2023, J.B. received four books in the mail.  She was very excited and took her books to her meeting with her "Survival Coach" to see if they could start a book club.  The books included "The Bean Trees" by Barbara Kingsolver and "Morrigan's Cross" by Norah Roberts.  Because J.B. is always cuffed and often tethered when she is escorted down the hallway, she cannot carry books, so an officer carried the books.  When they got back to her cell, the officer

Page 20        FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

threw the new books through the cuff port and onto the floor, intentionally triggering J.B. to swear at him, which he deserved.

87.     Even though it is clear that this was an unworkable situation, Defendant superintendent Brown and assistant superintendent of security Naugle allowed the officers who knew of Gray's sexual abuse but failed to stop it to remain in the same unit where J.B. was housed (Segregation), they had continuous contact with J.B., and continued to trigger J.B.

88.     Numerous other officers participated in additional conduct designed to trigger J.B., including but not limited to:

a.   Placed J.B. in a cell with feces on the walls upon her return from the rape exam, forcing her to clean the cell;

b.   Placed Kizer back on her unit after she filed a PREA complaint against him;

c.   Denied her outdoor time for months at a time;

d.   Denied her dayroom time;

e.   Denied her showers;

f.   Locked her in the shower;

g.   Refused to provide clean underwear after her shower;

h.   Provided a dirty spoon at mealtime;

i.   Lied on disciplinary reports;

j.   Refused to allow calls to her sexual abuse advocate;

k.   Pulled her through the cuff port;

l.   Denied an adequate tampon supply, then delayed a request for tampons when they were urgently needed;

Page 21        FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

m.  Imposed cell-ins and other sanctions for J.B.'s verbal disrespect after the above-listed conduct triggered her;

n.  Denied her grievance appeal forms even after numerous requests (Until November 5, 2023, she received only two grievance appeals forms which were inadvertently ruined due to a spill);

o.  Ignored her repeated requests for a Post Conviction Relief packet;

p.  Fed her fish though she is allergic;

q.  Gave her socks with holes;

r.  Refused to give medications;

s.  Refused to give her a phone and tablet (by Lt. Yonally) even though they were allowed;

t.  Took away her legal papers;

u.  Denied her an education;

v.  Refused to allow her to clean her cell;

w.  Refused to allow her new books;

x.  Gave her medications out of the same cup used for other prisoners and that contained residue of medications she is allergic to; and

y.  They ignored her when she hits her emergency button.

89.    In November 2023, J.B. had to endure relentless sexual harassment by another Adult in Custody who would yell to the entire DSU horrific things regarding defendant Gray's sexual abuse of J.B.  This went on for weeks, causing J.B. to suffer severe PTSD symptoms, anxiety, sleepless nights, and emotional distress.  The officers failed to take any action whatsoever to stop the harassment.  Disability Rights Oregon notified the Inspector General to no avail.  J.B.

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

attempted to file a PREA grievance to make it stop, but grievance Coordinator Arrington wrongfully and maliciously denied the grievance (discussed further below). It took emails from J.B.'s lawyer and Disability Rights Oregon to Oregon Department of Justice lawyers to get the problem resolved the week of November 27, 2023.

90.    On Sunday, December 8, 2023, J.B. was suffering a medical emergency where her limbs went numb and she could not speak. The officers ignored her pleas for help. She resorted to calling her lawyer (she had kept the phone in her cell), who immediately recognized she was having a medical emergency. Her lawyer called Captain Gonzalez (who was at home) who immediately called CCCF. Yet, no one came to J.B.'s cell to check on her. It took these so-called first responders 40 minutes to respond. J.B. was placed in the infirmary, never seen by a doctor, and was provided no meaningful treatment. Despite this unexplainable delay to an obvious emergency, J.B. survived.

91.    During November and December 2023, J.B. was subjected to numerous instances of wrongful, excessive and unnecessary uses of force by the officers, including being slammed against the wall, restraints that were too tight, being dragged across the floor by her restraints, and being slammed onto the floor.

92.    Sometime during December 2023, J.B. was subjected to a wrongful, excessive and unnecessary use of force by ODOC Officer Clark.

93.    On December 17, 2023, J.B. was subjected to wrongful, excessive and unnecessary use of force by Officers White and Simmons.

94.    On or about December 20, 2023, J.B. was subjected to a wrongful, excessive and unnecessary use of force by Lt. Yonally and another officer. Specifically, she was subjected to a

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

cell extraction, without warning, while she was on the phone with one of her lawyers. Lt. Yonally knew she was on the phone with her attorney because Yonally brought J.B. the phone. J.B. was slammed against the wall, dragged out of her cell and across the unit in her underwear, and then thrown into and locked in the shower.

95.    From December 20, 2023 through December 23, 2023, J.B. was denied bedding and was forced to sleep on the hard concrete floor. She was denied enough clothing to keep warm. The order to deny J.B. these necessary items was issued by Lt. Yonally.

96.    On January 30, 2024, J.B. was further traumatized by being tricked to come out of her cell and subjected to wrongful, excessive and unnecessary force to place her into a "burrito bag" and strapped to a gurney for the purpose of transporting her to a prison in another state.

97.    During the entire time between when the abuse was reported and J.B.'s transfer out of state, she received no meaningful mental health care. She failed to receive any meaningful therapy or medications for Post Traumatic Stress Disorder. She was prohibited by ODOC PREA leadership from discussing the sexual abuse by Gray with any mental healthcare provider.

**Facts Regarding Staff's Purposeful Obstruction of The Grievance Procedure**

98.    The 2023 GIPA Report devotes an entire section to the ineffectiveness of the grievance procedure, stating, "[T]he grievance process is not functioning effectively and needs immediate attention." The report summarizes the problems as follows:

> Residents reported that grievances are routinely rejected, and that the Grievance Coordinator "finds reasons to deny grievances" and "processes their own grievances…the ones we make about them." They also reported that staff make false claims about timeline requirements, or provide responses so late that the resident has less time to respond in the context of the overall timeline. They also reported that when they request assistance writing grievance or discrimination complaint and/or learning about the process, they are dismissed. Instead, they rely on their peers and Survival Coaches for support. Even then, it was reported that

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

when Survival Coaches request copies of grievance process flow charts, they are
told no.

99. J.B. experienced all of the above-listed problems with the grievance procedure. Even worse,
unlike the other adults in custody discussed in the above paragraph, she had no access to peers,
and limited access to Survival Coaches due to her status in the Disciplinary Segregation Unit.

100.    The grievance coordinator defendant Arrington appeared to be on a mission to obstruct
the grievance process for J.B., and upon information and belief, she was most likely the same
obstructionist that the women in the 2023 GIPA report filed a grievance on, which Arrington
denied, i.e., Arrington prevented it from going up the chain of command.

101.    Arrington purposefully obstructed J.B.'s ability to use the grievance process by rejecting
grievances without a valid reason; by refusing to respond to reasonable requests regarding the
number of grievances currently in play (enforcing ODOC's four grievance rule), telling J.B. to
"go file a public records request;" and by refusing to pick up grievances until it was past the 14
day deadline in which to file the grievance.

102.    When J.B. attempted to file a grievance against Arrington for failure to pick up her
grievances in a timely manner, Arrington refused to process the grievance and returned it as
"denied."

103.    J.B. attempted to file a grievance against BHS and the DSU Lieutenants for not stopping
the sexual harassment described in paragraph 89 above. Arrington wrongfully denied the
grievance, falsely stating that you cannot grieve another adult in custody, and that you can only
grieve "one incident" and the sexual harassment was ongoing. According to DPSST records,
Arrington is college educated with a Bachelor of Science degree, thus it is impossible that she
misconstrued clearly written grievance procedures. When J.B. attempted to refile the grievance

Page 25          FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

where she directed Arrington to the Administrative Rules which clearly state that Arrington was wrong for denying the grievance, Arrington again wrongfully denied the grievance. Arrington's actions can only be construed as malicious retaliation.

104.    Plaintiff gave timely tort claim notices on August 28, 2023, and again on March 28, 2024 for the continuing torts.

**FIRST CLAIM FOR RELIEF**

**(Civil Rights 42 USC § 1983 (Eighth Amendment – Sexual Abuse) against Defendants Gray, Kizer, Jost, Yonally, Leak, Gonzalez, Brown, Naugle, Wallace, Dennison, Urzua-Perez and Martin)**

105.    Plaintiff realleges paragraphs 1- 103.

106.    Defendant Gray violated the 8th Amendment prohibition against cruel and unusual punishment as follows:

In using his position of authority to engage in the repeated physical and sexual abuse of J.B. over the course of almost two months.

107.    Defendant Kizer violated the 8th Amendment prohibition against cruel and unusual punishment by sexually harassing J.B. shortly after the sexual abuse by Gray was reported to Oregon State Police.

108.    Defendant Gonzalez violated the 8th Amendment prohibition against cruel and unusual punishment as follows:

a.    In failing to take action to prevent Gray's continued violation of the Rule of Three in segregation, despite knowing that this violation was substantiated in a sex abuse investigation;

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

b.   In failing to do an after-action review of J.Z.'s case for five months to determine the cause of sexual abuse and sexual harassment thus allowing the abuse to continue with J.B.;

c.   In failing to ensure that corrective action was completed to prevent future abuse, including the abuse of J.B., from occurring; and

d.   In failing to ensure that officers followed the ODOC PREA Policy and the ODOC Post Orders in segregation.

109.    Defendants Brown, Naugle and Doe violated the 8th Amendment prohibition against cruel and unusual punishment as follows:

   a.    In failing to remove Gray from the women's prison after the numerous investigations for sexual abuse, sexual harassment, boundary violations, violations of the Rule of Three, intimidation and harassment of women employees, the use of excessive force, and numerous violations of security protocols;

   b.   In allowing Gray to work in a women's prison when it was clear based upon his work history that he was unsuited to work in a women's prison.

   c.   In placing Kizer back on to the same unit as where J.B. was housed after he sexually harassed her.

   d.   In placing J.B. back into segregation with the same officers who ignored the obvious sexual abuse, thus severely triggering her PTSD.

110.    Defendants Jost, Leak and Yonally violated the 8th Amendment prohibition against cruel and unusual punishment as follows:

   a.    They failed to enforce the Rule of Three in segregation;

   b.   They failed to enforce the ODOC PREA Policy and Segregation Post Orders;

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

c.  They failed to remove Gray from segregation after his numerous violations of policies

and procedures;

d.  They knew or should have known that Defendant Gray was using his position of

authority to sexually abuse J.B. in the segregation unit; and

e.  They failed to ensure that rounds were conducted in a manner that would ensure that

Gray could not sexually abuse prisoners in the segregation unit.

111.    Defendants Jost, Yonally, Leak, Wallace, Dennison, Urzua-Perez, and Martin violated

the 8th Amendment prohibition against cruel and unusual punishment in failing to report Gray, or

in otherwise turning a blind eye to Gray's physical and sexual abuse of J.B.

112.    As a result of defendants Gray, Kizer, Jost, Leak, Yonally, Brown Naugle, Doe, Wallace,

Dennison, Urzua-Perez and Martin's violations of Plaintiff's Eighth Amendment rights, Plaintiff

was repeatedly physically and sexually abused for almost two months.    Accordingly, plaintiff is

entitled to compensatory and punitive damages against defendants in an amount to be determined

at trial for the violations of 42 U.S.C § 1983 and for plaintiff's attorney fees and costs pursuant

to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

**(Civil Rights 42 USC § 1983 (Eighth Amendment – Unconstitutional Conditions of**

**Confinement) against Supervisory Defendants Brown and Naugle)**

113.    Plaintiff realleges paragraphs 1 – 103.

114.    The above allegations demonstrate that J.B. was subjected to unconstitutional conditions

of confinement and was simply not safe.

115.    The allegations in paragraphs 1 - 103 show that CCCF staff used all attempts to trigger

Page 28        FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

J.B. into committing an act of self-harm knowing that she already has a history of cutting and suicide attempts.

116.    The allegations in paragraphs 1 – 103 show that CCCF employees were completely indifferent to whether she lived or died by refusing to answer her emergency button, by giving her food she is allergic to, giving her medications she is allergic to, and by responding when they felt like it to medical emergencies.

117.    Supervisory defendants Brown and Naugle were well aware of J.B.'s history of self-harm and suicide attempts, but did nothing to remove the triggering officers and events in order to keep JB safe from a risk of harm.

118.    Defendants Brown and Naugle violated J.B.'s 8th Amendment Right to be free from cruel and unusual punishment by subjecting her to this serious risk of harm.

119.     Accordingly, plaintiff is entitled to compensatory and punitive damages against defendants in an amount to be determined at trial for the violations of 42 U.S.C § 1983 and for plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF

**(Civil Rights 42 USC § 1983 (First Amendment – Retaliation) against Defendants Jost, Yonally, Leak and Arrington)**

120.    Plaintiff realleges paragraphs 1-103.

121.    Defendants Jost, Yonally, Leak and Arrington engaged in retaliation prohibited by the First Amendment of the United States Constitution by making threats, issuing bogus disciplinary rule violations, purposefully attempting to trigger JB, allowing another AIC to relentlessly sexually harass JB, by making her sleep on the floor without proper bedding or clothing, and by

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

obstructing the grievance process.

122.    As a result of Jost, Yonally, Leak and Arrington's violations of JB's First Amendment

Rights, JB lived in continuous fear of further retaliation and suffered actual retaliation.

123.    Accordingly, plaintiff is entitled to compensatory and punitive damages against

defendants in an amount to be determined at trial for the violations of 42 U.S.C § 1983 and for

plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988.


## FOURTH CLAIM FOR RELIEF

### (Negligence – State of Oregon)

124.     Plaintiff realleges paragraphs 1-104.

125.    Defendant State of Oregon and its employees and agents had a duty to exercise

reasonable care in its treatment of J.B.

126.    State of Oregon's employees and agents, including but not limited to the individually

named defendants, were acting within the scope and course of their agency or employment.

127.    The State of Oregon's employees and agents were negligent in one or more of the

following particulars:

   a.    In failing to take any corrective action against Gray for his numerous violations of ODOC

   policies and procedures;

   b.    In allowing Gray to continue working in Segregation even though he had been accused of

   sexually abusing an adult in custody in Segregation;

   c.    In allowing Gray to continue violating the Rule of Three in Segregation when a prior

   investigation had already substantiated he was doing so;

Page 30          FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

d.  In refusing to allow JB to receive therapy for the PTSD she suffered after being abused by Gray;

e.  In failing to provide adequate medical and mental health care;

f.  In allowing a culture where high ranking male officers personify villainous superheroes;

g.  In fostering a culture where women (both employees and adults in custody) are abused, harassed, intimidated and retaliated against when a complaint is made against a male employee;

h.  In fostering a culture of silence and retaliation when a PREA Complaint is made by an adult in custody;

i.  In allowing plaintiff to be sexually harassed by another officer;

j.  In allowing plaintiff to be relentlessly sexually harassed by another woman in custdy; and

k.  In allowing ODOC employees, including high ranking officers, to launch a series of retaliatory actions against JB that amounted to physical and emotional abuse.

128.  The State of Oregon breached its duty in that its agents and employees knew or should have known that harm would come to J.B. in light of Gray's conduct and the culture that existed at CCCF.

129.  In the alternative, the State of Oregon's agents and employees knew or in the exercise of reasonable care should have known their acts and omissions as set forth herein would result in a foreseeable risk of injury to others, including plaintiff.

130.  The State of Oregon's employees and agents' conduct was unreasonable in light of the risk to others, including plaintiff.

131.  As a direct and proximate result of the State of Oregon's employees and agents'

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

negligence, plaintiff suffered sexual abuse, humiliation, severe emotional distress, anxiety, and PTSD.

132.    As a direct and proximate result of the State of Oregon's employees and agents' negligence, plaintiff will incur future economic damages for medical bills for treatment of severe emotional distress, anxiety and PTSD.

133.    Defendant State of Oregon is liable to Plaintiff for economic and noneconomic damages in amounts to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### (Sexual Battery – Defendant State of Oregon)

134.    Plaintiff realleges paragraphs 1-104.

135.    Gray was an employee of the State of Oregon when he engaged in acts of sexual battery which were intended to cause harmful or offensive contact with JB, and which did cause harmful and offensive contact to JB.

136.    Defendant State of Oregon is vicariously liable for Gray's conduct because his conduct was within the course and scope of his employment, in that his conduct occurred within the time and space limits authorized by his employment with Defendant State of Oregon, he was motivated by a purpose to serve Defendant State of Oregon as a correctional officer, he was enabled by the State of Oregon, and he was providing security services that he was hired to perform, and that conduct resulted in the acts that injured J.B..

137.    As a direct and proximate result of Gray's conduct, plaintiff suffered physical and sexual abuse, humiliation, severe emotional distress, anxiety, and PTSD.

138.    As a direct and proximate result of Gray's conduct, plaintiff will incur future economic

Page 32        FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

damages for medical bills for treatment of severe emotional distress, anxiety and PTSD.

139.    Defendant State of Oregon is liable to Plaintiff for economic and noneconomic damages in amounts to be determined at trial.

### SIXTH CLAIM FOR RELIEF

### (State of Oregon – Battery)

140.    Plaintiff realleges paragraphs 1-104.

141.    The individuals described in paragraphs 91-94 and 96 were employees and agents of Oregon when they engaged in acts of battery which were intended to cause harmful or offensive contact with JB, and which did cause harmful and offensive contact to JB.

142.    Defendant State of Oregon is vicariously liable for the officers' conduct alleged in paragraphs 91-94 and 96 because their conduct was within the course and scope of their employment, in that their conduct occurred within the time and space limits authorized by their employment with Defendant State of Oregon, they were motivated by a purpose to serve Defendant State of Oregon as correctional officers, they were enabled by the State of Oregon, and they were providing security services that they were hired to perform, and that conduct resulted in the acts that injured J.B.

143.    As a direct and proximate result of the officers' conduct (as alleged in paragraphs 91-94 and 96), plaintiff suffered physical injuries, humiliation, severe emotional distress, anxiety, and PTSD.

144.    As a direct and proximate result of the officers' conduct (as alleged in paragraphs 91-94 and 96), plaintiff will incur future economic damages for medical bills for treatment of severe emotional distress, anxiety and PTSD.

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

145.   Defendant State of Oregon is liable to Plaintiff for economic and noneconomic damages in amounts to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (State of Oregon – Intentional Infliction of Emotional Distress)

146.   Plaintiff realleges paragraphs 1-104.

147.   The actions of the employees and agents of the State of Oregon, as described above, were intended to inflict severe emotional distress on Plaintiff.

148.   In the alternative, the actions of the employees and agents of the State of Oregon were certain or substantially certain to cause J.B. severe emotional distress.

149.   These acts consisted of an extraordinary transgression of the bounds of socially tolerable conduct and/or exceeded any reasonable limit of social toleration.

150.   As a direct and proximate result of the State of Oregon's employees and agents' actions, plaintiff suffered sexual abuse, humiliation, severe emotional distress, anxiety, and PTSD.

151.   As a direct and proximate result of the State of Oregon's employees and agents' actions, plaintiff will incur future economic damages for medical bills for treatment of severe emotional distress, anxiety and PTSD.

152.   Defendant State of Oregon is liable to Plaintiff for economic and noneconomic damages in amounts to be determined at trial.

WHEREFORE, plaintiff prays for relief as follows:

a.  For judgment in favor of plaintiff against defendants for her compensatory and punitive damages;

b.  For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988;

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

d.  For such other and further relief as may appear just and appropriate.

DATED: 1/24/2025

_/s/Lynn S. Walsh_____
Lynn S. Walsh, OSB #92495
(503)790-2772
Of attorneys for plaintiff

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
lynn@lynnwalshlaw.com

## CERTIFICATE OF SERVICE

I certify that I mailed via first class mail and email the following Motion for Leave to File First Amended Complaint on February 21, 2025 to the following individuals:

Levi Gray
2232 SE Pine St., #7
Portland, OR  97214
Levvus007@gmail.com

/s/ Lynn S. Walsh
Lynn S. Walsh, OSB #924955
Of Attorneys for Plaintiff