UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| J.B., | Case No. 3:23-cv-01962-CL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| LEVI GRAY, JAYSON LEAK, PAUL KIZER, JOHN WALLACE, JAMIE DENNISON, FELIPE URZUA-PEREZ, STEPHEN MARTIN, THOMAS JOST, ROBERT YONALLY, LISA ARRINGTON, CHAD NAUGLE, NICOLE BROWN, DAVID GONZALEZ, and the STATE OF OREGON, | |
| Defendants. | |

**CLARKE,** United States Magistrate Judge.

Plaintiff J.B. moves for an order imposing sanctions on the defendants[1] pursuant to Federal Rule of Civil Procedure 37(e), for failure to preserve electronically stored information. On February 3, 2026, the Court heard oral argument. Plaintiffs' Motion for Sanctions (ECF #62) is GRANTED in part and DENIED in part.

**LEGAL STANDARD**

Rule 37(e) permits the imposition of sanctions where ESI that should have been preserved in the anticipation of litigation is lost due to a party's failure to take reasonable steps to

---

[1] The only defendant who is not a party to this motion is Defendant Levi Gray, who is currently incarcerated and not represented by counsel.

preserve it, and it cannot be restored or replaced through additional discovery. Fed. R. Civ. P.

37(e). In such a case, the Court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>     a. presume that the lost information was unfavorable to the party;
>     b. instruct the jury that it may or must presume the information was unfavorable to the party; or
>     c. dismiss the action or enter a default judgment.

"Rule 37 sanctions must be applied diligently" to appropriately penalize those who violate the

rule and to deter others from engaging in misconduct. *Roadway Exp., Inc.*, 447 U.S. at 763.

## DISCUSSION

As a preliminary matter, Plaintiff's Motion for Sanctions requests relief in the form of a

default judgment. At oral argument, Plaintiff's counsel conceded that this is not an appropriate

form of relief in this case. Therefore, this portion of the motion is DENIED. The remainder of

the motion is well-taken, however, and, for the reasons below, the Court finds that it can be

easily inferred that the defendants in this case acted or failed to act with the intent to deprive

Plaintiff of the use of the video documentation in this case that would have been favorable to her

claims and unfavorable to the defendants. The remainder of the motion is therefore GRANTED,

and the Court will instruct the jury that it must presume that the information lost was unfavorable

to the defendants.

### I.    FACTS

The facts involving the video ESI in this case are not in dispute, nor are many of the facts

of the underlying case. First, it is undisputed that Plaintiff J.B. was a very young woman with

mental disabilities who was incarcerated and housed at the Coffee Creek Correctional Facility

(CCCF) during the events relevant to this lawsuit and this motion.

J.B. was housed in isolation (also known as Segregation) in the Special Housing Unit of CCCF beginning in March, 2023. Walsh decl. ¶ 4, Ex. 2. There are three cells in SHU (108-110) which consist of a cell with a sallyport on the outside of the cell with a door that can be opened or closed. Walsh decl. ¶5, Ex. 3; ¶8, Ex. 4. The SHU security cameras do not show what is happening in the SHU cells, but Cell 109 has a camera within the cell. Walsh decl. ¶¶ 6-7. Housing records show that J.B. was in SHU cell 109 from March 16, 2023, to May 2, 2023, when she was moved into Cell 108. Walsh decl. ¶4, Ex. 2. Cell 108 has no camera within the cell or sallyport. Walsh decl. ¶ 7.

On May 23, 2023, J.B. reported to ODOC officials, including the defendants, that she was sexually assaulted by a prison guard, Levi Gray.  The assault took place that same night, on May 23, 2023.  Plaintiff also reported that she had been experiencing ongoing sexual assault by the same person, for approximately two months leading up to May 23, 2023.

Lieutenant Jack Rowlett was the first CCCF staff member to respond to the incident. Walsh decl. ¶16, Ex. 11. Rowlett placed J.B. in a holding cell and conducted the initial interview. *Id*. He then notified the PREA Compliance Manager, Captain Gonzalez. *Id*.

The parties agree that ODOC took several measures to preserve the evidence of that night's assault, including quickly isolating J.B., interviewing her immediately, saving the video of the area near her cell, taping off the crime scene, and collecting J.B.'s clothing in the police evidence locker. *Id*. Rowlett also sent a memorandum to Defendant Gonzalez about the events surrounding the May 23 assault. Walsh decl. ¶ 9, Ex. 5. This memorandum described Gray's actions that night, as well as the months of sexual abuse. *Id*.

The Oregon State Police (OSP) were notified that night and Detective Josh McNeely was assigned to the case. McNeely began his investigation by requesting video of Gray during his shifts. On May 24th, 2023, McNeely requested two months of videos of Gray working in SHU. Walsh decl. ¶11, Ex. 6. On May 25th, McNeely reminded them that it was important to get these videos "before the video is lost or purged." Walsh decl., ¶12, Ex. 7. McNeely requested an update regarding the video on June 20, 2023. Walsh decl ¶13, Ex. 8. After June 20, there is no further evidence of any more communication regarding the videos, and McNeely did not receive any videos, other than the video of May 23. McNeely completed his investigation, and Gray was charged by the Washington County District Attorney in criminal case 23-CR-39700 for the acts that occurred only on May 23, 2023. Gray was convicted of two counts of first degree custodial sexual misconduct for his actions on May 23, 2023, and sentenced to 20 months in prison. Walsh decl. ¶3, Ex. 1.

Plaintiff's current counsel gave Defendants timely tort claim notice on August 28, 2023.[2] The lawsuit was filed on December 27, 2023. On March 18, 2024, Plaintiff sent her First Request for Production to Defendants, which included the following:

> Please provide all video from April 1, 2023 to May 23, 2023 from Plaintiff's housing area. This request includes, but is not limited to, all video that would have been preserved as a result of any investigation into defendant Gray.

Walsh decl. ¶22, Ex. 17.

Finally, Plaintiff submits evidence that Defendants knew that civil litigation would result from Gray's sexual abuse of J.B. On June 4, 2023, shortly after discovering the abuse, Defendant

---

[2] Plaintiff also asserts that on June 12, 2023, the law firm of Kafoury and McDougal, representing Plaintiff at the time, gave Defendants a tort claim notice alleging that Plaintiff had been sexually abused by Gray in April and May of 2023. Plaintiff cites to a declaration: "McDougal Decl., Ex. 1," but the Court cannot find a corresponding exhibit in the record for this document. Defendants do not dispute that such a tort claim notice was received, however.

Naugle sent a text message to ODOC employees instructing them not to use AIC names in emails. Walsh decl. ¶20, Ex. 15. Naugle confirmed in the email chain that he had been requesting "mindfulness" regarding upcoming litigation and requesting that staff only use the names of the AICs in emails "when needed," due to emails being public record and part of the litigation. *Id.*

## II.    Rule 37 Sanctions

First, it is clear that the Defendants in this case failed to take reasonable steps to preserve ESI, in the form of video footage, that should have been preserved in the anticipation of litigation.  Defendants should have reasonably foreseen that the abuse and assault would result in litigation. Video footage dating back two months prior to the incident was requested multiple times by investigators.  Plaintiff's claims made it clear that she alleged that Gray had been abusing her for two months prior to the discovery of the assault. *See Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017), aff'd, No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022) ("The duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence and is triggered not only when litigation is pending but also when it is reasonably foreseeable to that party."). Thus, Defendants were immediately on notice, even before Plaintiff's tort claim notice was provided and her Complaint filed.  That video footage is now lost, and it cannot be restored or replaced through additional discovery. *See* Fed. R. Civ. P. 37(e). Therefore, Rule 37 Sanctions are appropriate in this case.

The Court also finds that the loss of the video footage has prejudiced Plaintiff in this case. Video evidence of the dates and times when Gray escorted her to her cell and when he spent long periods of time inside or outside her cell could have corroborated her story that he was sexually abusing her by matching up with the dates and times that she asserts he had access

to her with no other witnesses present. Without that video footage, Plaintiff will have very little

other evidence to support her claims, due to the circumstances of her incarceration.

Based on all of the above, the Court may order measures "no greater than necessary to

cure the prejudice," under Rule 37(e)(1). Under Rule 37(e)(2), however, if the Court finds that

the Defendants "acted with the intent to deprive [Plaintiff of the video's] use in the litigation,"

the Court may "presume that the lost information was unfavorable to the party, instruct the jury

that it may or must presume the information was unfavorable to the party, or dismiss the action

or enter a default judgment."

Rule 37(e)'s "intent to deprive" a party's use of ESI in litigation can be shown when a

party cannot explain why it departed from standard operating procedure and failed to preserve

ESI. *Alabama Aircraft Indus., Inc.*, 319 F.R.D. at 746. The "intent to deprive" can also be shown

when a party selectively preserves ESI which it knows to be relevant but allows other portions to

be automatically overwritten. *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774 (E.D.

Mich. 2019).

Here, the defendants selectively preserved the video footage of the isolated date of May

23, 2023, on which the assault was discovered, but failed to preserve similar video footage of the

two months prior to the incident, despite knowing that Plaintiff alleged on-going assault by the

same individual over that longer time period. The failure to preserve this ESI has not been

adequately explained. Additionally, the Plaintiff has alleged, and the defendants have not

disputed, that defendants took other actions in anticipation of litigation that provide further

support for the intent to deprive, such as asking employees not to use Plaintiff's name in emails

that could become part of the record in litigation. The Court therefore finds sufficient intent to

deprive Plaintiff of the use of the video in civil litigation.

The final question for the Court is the appropriate measures to cure the prejudice. Plaintiff has conceded that default judgment is not appropriate in this case, and she requests an adverse inference jury instruction. The Court finds that an adverse inference jury instruction is the appropriate remedy because there is no other measure that can be taken to ameliorate the prejudice in this case.

Defendants argue that the individual defendants should not be subject to such a harsh remedy because they were not individually responsible for the failure to preserve the video footage in this case. The Court disagrees. All of the defendants were on notice of the sexual assault from the date that it was discovered on May 23, 3023, all of the defendants were on notice that Plaintiff alleged abuse for two months prior to May 23, and all of the defendants were given timely tort claim notice at the latest by August, 2023, and possibly by June 12, 2023. All defendants were therefore responsible for the reasonable preservation of evidence, including the video footage at issue in this motion.

The specific language of the adverse jury instruction will be determined at the pretrial conference. The Court will consider proposed instructions from the parties, but the instructions will include a statement that the jury can infer that the missing video would have been harmful to the defendants and to their case.

## ORDER

Plaintiffs' motion for sanctions (ECF #62) is GRANTED in PART and DENIED in PART. Each party shall bear its own costs.

It is so ORDERED and DATED this __11__ day of March, 2026.

MARK D. CLARKE
United States Magistrate Judge